USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/28/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                       :

CHRISTINA GONZALEZ,                 :
                                         :

                      Plaintiff,     :           1:15-cv-810-GHW
                                         :

                  -v-         :      MEMORANDUM OPINION
                               :         AND ORDER

BRONX COUNTY HALL OF JUSTICE  :
COURT OFFICER MARK HIRSCHMAN :
SHIELD 7421, in his individual capacity, BRONX :
COUNTY HALL OF JUSTICE COURT    :
OFFICER CAPTAIN ROBERTO VARGAS, in  :
his individual capacity, BRONX COUNTY HALL :
OF JUSTICE COURT OFFICER PETER    :
DAURIA TAX REGISTRY NO. A7123, in his  :
individual capacity,                 :
                                         :

                      Defendants.  :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Ms. Christina Gonzalez was arrested several times at the Bronx criminal courthouse while

protesting the New York City Police Department's "stop and frisk" policy.  She claims that the

court's officers arrested her in order to chill her exercise of her First Amendment rights, and that

during each of her arrests, the officers used excessive force against her.  Defendants have moved to

dismiss the first of Ms. Gonzalez's claims because she filed her complaint one day after the

expiration of the statute of limitations.  Defendants have also moved to dismiss certain of her claims

for failure to state a claim.  Because the Court finds that the circumstances that caused Ms. Gonzalez

to miss the filing deadline by one day justify the application of equitable tolling, the Court denies

defendants' motion in part.  Because the injuries alleged by Ms. Gonzalez are not sufficient to state a

claim for use of excessive force, the Court grants defendants' motion in part.

I.     **Factual Allegations[1]**

Ms. Gonzalez repeatedly protested the NYPD's "stop and frisk" policies in demonstrations at the criminal courthouse in the Bronx.  First Amended Complaint ("FAC"), Dkt. No. 13 ¶¶ 1, 8. Indeed, because Ms. Gonzalez was particularly active, the NYPD circulated a flyer with her name and photo, identifying her as a "professional agitator."  *Id.* ¶ 1.  As a result of her protests, Ms. Gonzalez was arrested by court officers on three separate occasions, each of which is described below.

A.     **The February 2012 Arrest**

Ms. Gonzalez was first arrested on February 1, 2012.  Ms. Gonzalez was at the courthouse to observe the scheduled court appearance of a fellow protester.  Court Officer Mark Hirschman recognized Ms. Gonzalez as a frequent protester, and approached her in a hallway of the courthouse.  Officer Hirschman grabbed Ms. Gonzalez's bag and her wrist, twisting her painfully. The officer then threw Ms. Gonzalez against a wall, bruising her shoulders.  Officer Hirschman handcuffed Ms. Gonzalez tightly, then dragged her down the hall to an elevator.  While being dragged, all of Ms. Gonzalez's weight was concentrated on the handcuffs, which cut into her wrists. Officer Hirschman and two other officers then crushed Ms. Gonzalez against the elevator wall, smothering her, and, again, bruising her shoulders.

Officer Hirschman swore out a criminal complaint against Ms. Gonzalez in connection with her arrest.  Ms. Gonzalez alleges that Officer Hirschman lied in that complaint, falsely stating that Ms. Gonzalez had disobeyed the officer's requests to put away or turn over video and audio recording devices.  As a result of her arrest, Ms. Gonzalez was held in police custody on Riker's

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for purposes of this Rule 12(b)(6) motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Island for forty one hours.  Ms. Gonzalez was forced to return to court at least ten times to defend herself against the charges initiated against her by Officer Hirschman.  More than three years elapsed before all of the charges against Ms. Gonzalez relating to her arrest were ultimately dismissed on June 25, 2015.

### B.  The April 2012 Arrest

Ms. Gonzalez was arrested for the second time on April 10, 2012.  The complaint suggests that Ms. Gonzalez was on her way into the courthouse for a scheduled hearing in connection with her February arrest when she was confronted by Captain Vargas.  Like Officer Hirschman, Captain Vargas recognized Ms. Gonzalez as a frequent protester; she was wearing a red shirt with the inscription "Warning:  Stop + Frisk Kills."  Captain Vargas ordered Ms. Gonzalez to remove her shirt, or to obscure its inscription before entering the courthouse.  That Ms. Gonzalez refused to do, "stating that she had a freedom of speech right to wear said shirt displaying its inscription." FAC ¶ 48.

Captain Vargas reacted by ordering Court Officer Peter Dauria to arrest Ms. Gonzalez. Officer Dauria handcuffed Ms. Gonzalez, and dragged her away.  Ms. Gonzalez alleges that the handcuffs were too tight, and that the weight of her body was concentrated on her wrists as the officers dragged her away.  As a result, she suffered bruising and abrasions to her wrists.  Ms. Gonzalez was released after two hours in custody; the criminal charges brought against her in connection with her arrest were terminated in her favor without conviction.

### C.  The July 2012 Arrest

The final arrest at issue in this case took place on July 12, 2012.  Ms. Gonzalez had been ordered to appear at the courthouse on that day, and was standing outside of the courthouse, talking with her defense attorney.  A friend of Ms. Gonzalez saw Officer Hirschman and asked Ms. Gonzalez if he was the officer who had previously attacked her.  The amended complaint is unclear

3

whether it was that question, or something altogether different, that provoked Captain Vargas and Officer Hirschman. But after Ms. Gonzalez's friend asked her question, Captain Vargas and Officer Hirschman restrained both Ms. Gonzalez and her friend. Officer Hirschman again handcuffed Ms. Gonzalez's wrists. As in the other incidents, Ms. Gonzalez alleges that the handcuffs were too tight, and that she was dragged away from the area in a way that pressed the full weight of her body against the handcuffs, which cut into her wrists. As a result, Ms. Gonzalez wrists were bruised and abraded. Ms. Gonzalez was released from custody after ninety minutes. As before, the criminal charges brought against her in connection with her arrest were terminated in her favor without conviction.

## II.   Procedural History

Ms. Gonzalez first filed this action on February 3, 2015. She filed an amended complaint on June 28, 2015. Defendants have moved to dismiss the amended complaint in part, raising three principal arguments. First, defendants argue that all claims arising out of the February 2012 incident are barred by the three-year statute of limitations that applies to Section 1983 claims in New York. Second, defendants contend that the excessive force claims arising out of the April and July 2012 incidents fail to state a claim because Ms. Gonzalez alleged neither that the application of force caused her serious and lasting injury nor that she had complained to the arresting officers that the handcuffs were too tight. Finally, defendants seek dismissal of the claims against Captain Vargas arising out of the July 2012 arrest because, they claim, the complaint does not plead that he was personally involved in the alleged constitutional tort.

## III.   Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). To avoid dismissal, a complaint must

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

IV.     **Discussion**

   A.  **Expiration of the Statute of Limitations for the February Incident**

Defendants first argue that the claims arising from the February incident are time-barred. "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Schomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)).

Ms. Gonzalez filed her complaint on February 3, 2015—one day after the statute of limitations expired with respect to claims arising out of the February 1, 2012 incident.[2] Ms. Gonzalez concedes that she failed to file this action within the statute of limitations. She argues instead that her claim should be preserved by application of either the continuing violation doctrine or the doctrine of equitable tolling. The Court finds that Ms. Gonzalez is entitled to equitable tolling of her claim in this instance. As a result, the Court does not address Gonzalez's continuing violation argument.

Compliance with the statute of limitations is not a jurisdictional bar to claims arising under Section 1983. Consequently, such claims may be subject to equitable tolling. *Jefferson v. Kelly*, No. 06-CV-6616 (NGG) (LB), 2008 WL 1840767 at *4 (E.D.N.Y. Apr. 22, 2008) (noting in a Section 1983

---

[2] The effective expiration of the statute of limitations was February 2, 2015 because February 1, 2015 was a Sunday.

action "that a statute of limitations is not jurisdictional, but rather is subject to waiver, estoppel, and equitable tolling."); *Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 456 (S.D.N.Y. 2013) (permitting equitable tolling of claims in a Section 1983 action). "Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003). However the doctrine is reserved for "rare and exceptional" circumstances. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003) (internal quotation marks omitted). "Equitable tolling is generally considered appropriate 'where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period' . . . ." *Id.* at 80 (quoting *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002)).

Plaintiff's counsel represented to the Court that Ms. Gonzalez waited to file her complaint until the statutory period had nearly expired because the criminal proceedings arising out of Ms. Gonzalez's first arrest had not yet been resolved. *See* Transcript of the June 3, 2015 conference, Dkt. No. 30 at 4. Following the completion of those proceedings, plaintiff's counsel intended to file the complaint on January 30, 2015—the second to last business day within the statute of limitations. On that day, plaintiff's counsel attempted to file the complaint along with a photocopy of plaintiff's request to proceed *in forma pauperis* ("IFP"). Although the IFP application was properly completed and executed, plaintiff contends that the filing was rejected by the clerk of the Southern District of New York because the IFP application was a photocopy, not the original document itself. Plaintiff's Opposition ("Pl. Opp'n"), Dkt. No. 20 at 3-6. Plaintiff's counsel explains that the rejection was

6

unexpected because the Court's Electronic Case Filing Rules & Instructions do not explicitly require paper originals at the time of filing for many items, including IFP applications. *Id.* at 4. After the complaint was rejected, plaintiff's counsel requested the original IFP application from Ms. Gonzalez, who had to mail the form to him from New Mexico. Plaintiff's counsel successfully filed the complaint on February 3, 2015, after he received the original IFP application. Ms. Gonzalez made no changes to the IFP application or to the complaint during the intervening days, except to add a footnote in the complaint that described counsel's attempt to file on January 30, 2015. *Id.*

Ms. Gonzalez has demonstrated that she acted with reasonable diligence during the time that she seeks to have tolled. *Zerilli–Edelglass*, 333 F.3d at 80. She is only seeking to toll one day. The record demonstrates that plaintiff's counsel acted diligently to satisfy the clerk's request for an original signed copy of the IFP application from the time that he was made aware of that requirement. The Court views this situation as analogous to the filing of a defective pleading during the specified time period. But for the Clerk's Office rejection of the photocopied IFP application, Ms. Gonzalez would have timely commenced this action. The Court is conscious of the fact that an administrative hurdle allegedly imposed by court staff impeded plaintiff's ability to file her action timely. Under these particular and unusual circumstances, the Court believes that equity should afford plaintiff one day of grace. Therefore, the Court applies the doctrine of equitable tolling, and denies defendants' motion to dismiss plaintiff's claims relating to the February 2012 arrest.

### B. Excessive Force Claims for the April and July Arrests

Defendants next contend that Ms. Gonzalez's excessive force allegations for the April and July incidents fail to state a claim.[3] "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's

---

[3] Defendants have not asserted that the complaint's allegations regarding the February 2012 arrest fail to state a claim for use of excessive force.

'reasonableness' standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)) (internal quotation marks omitted). To determine whether the force used in a given arrest is reasonable, courts pay "careful attention to the facts and circumstances of each particular case," and judge the "reasonableness" of the arrest "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. at 396).

Ms. Gonzalez's excessive force claims stemming from her April and July arrests are premised on her allegations that she suffered "bruising and abrasions to her wrists" as a result of tight handcuffs and the pressure placed on them. FAC ¶¶ 52, 70. In analyzing excessive force claims arising out of the use of handcuffs, courts in this circuit frequently consider "(1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Gonzalez v. City of New York*, No. 14 Civ. 7721 (LGS), 2015 WL 6873451, at *9 (S.D.N.Y. Nov. 9, 2015). "The injury requirement is particularly important, because in order to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Morocho v. New York City*, No. 13 Civ. 4585 (KPF), 2015 WL 4619517, at *7-8 (S.D.N.Y. July 31, 2015) (internal quotations and citations omitted). Furthermore, there is a consensus among district courts in this circuit that "[a] claim of excessive force is not established by allegations that overly tight handcuffs caused minor, temporary injuries." *Guerrero v. City of New York*, No. 12 Civ. 2916 (RWS), 2013 WL 5913372, at *6 (S.D.N.Y. Nov. 4, 2013).

The complaint fails to plead a viable claim for excessive use of force with respect to the April and July arrests. While Ms. Gonzalez alleges that the handcuffs were too tight on both occasions, she does not allege that she asked either officer to loosen her handcuffs or that either officer ignored such pleas. Moreover, Ms. Gonzalez's allegations of "bruising and abrasions to her wrists" as a result of the tight handcuffs are precisely the type of minor injuries routinely held by

courts in this circuit to be insufficient to state a claim of excessive force.  *See, e.g., Pierre v. City of New York*, No. 12 Civ. 9462 (LAK) (GWG), 2014 WL 56923, at *9 (S.D.N.Y. Jan. 7, 2014) (allegations that tight handcuffs left "indentations" on wrists failed to state a claim of excessive force); *Guerrero*, 2013 WL 5913372, at *6 (allegations that tight handcuffs caused "swelling and contusions" failed to state a claim of excessive force); *Remy v. Beneri*, 09 Civ. 4444 (SJF) (AKT), 2011 WL 5546237, at *4, n. 4 (E.D.N.Y. Nov. 9, 2011) (allegations that tight handcuffs caused "heavy swelling in both wrists" insufficient to state a claim of excessive force); *Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (allegations that tight handcuffs caused inflammation for a period of twenty-four hours insufficient to state a claim of excessive force); *see also Higginbotham v. City of New York*, No. 14-cv-8549 (PKC), 2015 WL 2212242, at *6 (S.D.N.Y. May 12, 2015) ("[T]here is a consensus in the case law that tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising.").  Therefore, Ms. Gonzalez's claims regarding excessive use of force in connection with the April and July arrests are dismissed.

### C.  Personal Involvement of Captain Vargas in the July Incident

Finally, defendants argue that all claims against Captain Vargas arising out of the July incident must be dismissed because plaintiff has not alleged that he was personally involved in the incident.  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  In *Colon v. Coughlin*, the Second Circuit described a variety of means by which the personal involvement of a supervisory defendant can be shown.  58 F.3d 865, 873 (2d Cir. 1995).  The first route described by the Circuit was the simplest—evidence that "the defendant participated directly in the alleged constitutional violation . . . ."  *Id.*  The Second Circuit has explained that the term "direct participation" includes "personal participation by one who has knowledge of the facts that rendered

9

the conduct illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). But the term does not foreclose liability of a person who, with knowledge of the illegality, acts in a more indirect manner such as by "ordering or helping others to do the unlawful acts." *Id.*

In her original complaint, Ms. Gonzalez alleged that during the July incident "Vargas physically restrained and seized Plaintiff's friend," while Officer Hirschman "in the presence of Defendant Vargas, physically restrained and seized Plaintiff." Original Complaint, Dkt. No. 1, ¶¶ 61-62. In the amended complaint, filed after defendants disclosed their intention to raise the argument that the complaint did not adequately plead Captain Vargas's involvement, Ms. Gonzalez modified those allegations to say that "Vargas and Hirschman, physically restrained and seized Plaintiff's friend, and Plaintiff . . . ." FAC ¶ 68. In defendants' view, "the Amended Complaint tries to obscure the fact that Sgt. Vargas detained Plaintiff's friend, not Plaintiff herself." Defendants' Brief, Dkt. No. 18 at 18. Notwithstanding the language of the amended complaint, defendants ask the Court to find that Captain Vargas had no physical contact with Ms. Gonzalez on that day, and, as a result, was not personally involved in the constitutional tort.

While the Court understands defendants' skepticism regarding the fortuitous evolution of the complaint's allegations, the Court is bound to accept the factual allegations in the operative complaint as true. The amended complaint plainly states that Captain Vargas and Officer Hirschman collectively restrained and seized Ms. Gonzalez. FAC ¶ 68. Accordingly, Ms. Gonzalez has sufficiently alleged that Captain Vargas personally participated in the alleged constitutional violations that took place during the July incident. Ms. Gonzalez claims against Captain Vargas arising from the events of July 12, 2012 survive the defendants' motion to dismiss. Defendants are free to contest the accuracy of the factual allegations in the complaint on summary judgment or at trial.

### D.  Leave to Amend First Amended Complaint

Ms. Gonzalez has requested leave to file a second amended complaint.  Pl. Opp'n at 6.

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."

*Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).  Leave to amend should be granted unless

there is evidence of undue delay, bad faith, undue prejudice, or futility.  *Milanese v. Rust–Oleum Corp.*,

244 F.3d 104, 110 (2d Cir. 2001).  All of Ms. Gonzalez's claims survive this motion except for her

excessive force claims arising from the April and July incidents.  The Court has already granted Ms.

Gonzalez leave to amend her complaint once to bolster the allegations related to her excessive force

claims.  Nonetheless, the Court will grant Ms. Gonzalez leave to further amend her complaint to

address those deficiencies.

### V.     Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in

part.  All of Ms. Gonzalez's claims arising from the events of February 1, 2012 survive the motion to

dismiss.  Ms. Gonzalez's excessive force claims arising from the events of April 10, 2012 and July 12,

2012 are dismissed.  Ms. Gonzalez's claims against Captain Vargas arising from the events of July 12,

2012 survive the motion to dismiss.

The Clerk of the Court is directed to terminate the motion pending at docket number 16.

SO ORDERED.

Dated: January 28, 2016
       New York, New York

_____
GREGORY H. WOODS
United States District Judge