UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
+-----------------------------------------------+
| USDC SDNY                                     |
| DOCUMENT                                       |
| ELECTRONICALLY FILED                           |
| DOC #: _____                         |
| DATE FILED:  01/31/2017                        |
+-----------------------------------------------+
```

-------------------------------------------------------------- X
                         :

CHRISTINA GONZALEZ,               :
                         :

                Plaintiff,    :           1:15-cv-810-GHW
                         :

          -v-                :     MEMORANDUM OPINION
                         :        AND ORDER

BRONX COUNTY HALL OF JUSTICE   :
COURT OFFICER MARK HIRSCHMAN   :
SHIELD 7421, in his individual capacity, BRONX :
COUNTY HALL OF JUSTICE COURT     :
OFFICER CAPTAIN ROBERTO VARGAS, in  :
his individual capacity, BRONX COUNTY HALL :
OF JUSTICE COURT OFFICER PETER    :
DAURIA TAX REGISTRY NO. A7123, in his  :
individual capacity,              :
                         :
                         :
                Defendants.   :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Plaintiff, Christina Gonzalez, was arrested three times at the Bronx criminal courthouse while protesting the New York City Police Department's "Stop and Frisk" policy.  She claims that the court's officers arrested her in order to chill the exercise of her First Amendment rights, and that the officers used excessive force against her.  Ms. Gonzalez filed this action under 42 U.S.C. § 1983, alleging false arrest, the use of excessive force, and First Amendment retaliation against three court officers involved in her arrests.  Because the Court finds that there are insufficient facts to support Plaintiff's excessive force claim, and because the Court finds that the arresting officers had probable cause—or at least arguable probable cause—to arrest Ms. Gonzalez on all three occasions, Defendants' motion for summary judgment is GRANTED.

I.      BACKGROUND

A. **Factual Background**[1]

The salient facts regarding Plaintiff's arrests are largely not in dispute.  Ms. Gonzalez repeatedly protested the NYPD's "Stop and Frisk" policies in demonstrations at the criminal courthouse in the Bronx.  First Amended Complaint ("FAC"), Dkt. No. 13 ¶¶ 1, 8; *see also* Pl.'s Local Rule 56.1 Responsive Statement ("Pl.'s 56.1), Dkt. No. 59.  As a result of her protests, Ms. Gonzalez was arrested by court officers on three separate occasions, each of which is described below.

1. **The February 1, 2012 Incident**

Ms. Gonzalez was at the courthouse on February 1, 2012 to observe a scheduled hearing. Pl.'s 56.1 ¶¶ 6-7.  Ms. Gonzalez was not the only person in attendance; a large crowd formed outside the courtroom, including attorneys, the media, and members of the public.  *Id.* ¶ 12.

Court Officer Mark Hirschman was on duty that day.  *Id.* ¶ 6.  While patrolling inside the courthouse, Officer Hirschman saw Ms. Gonzalez and noticed that she was holding a cellular phone with video recording capabilities.  *Id.* ¶ 8.  Based on this observation, Officer Hirschman believed that Ms. Gonzalez was recording the events taking place inside the courthouse and directed Ms. Gonzalez to stop.  *Id.* ¶ 9.  Shortly thereafter, Officer Hirschman noticed that Ms. Gonzalez was holding a device with audio recording capabilities.  *Id.* ¶ 10.  Pursuant to a Unified Court System ("UCS") policy, "[d]evices with the ability to record audio, still images or video shall not be not permitted in the court facilities and courthouses and must be vouchered until the conclusion of the owner's court business."  *Id.* ¶ 11.  The "provision does not apply to cellular telephones with auxiliary cameras or recording devices, provided that these devices are not used to take picutres or

---

[1] Unless otherwise stated, the following facts are not disputed for purposes of this motion, or are taken in the light most favorable to Ms. Gonzalez.

record proceedings in the courthouse." *Id.* Accordingly, Officer Hirschman informed Ms. Gonzalez that her recording device was not permitted within the courthouse. *Id.* ¶ 10.

The parties disagree regarding precisely what happened next, but do not dispute that Officer Hirschman told Ms. Gonzalez that she must leave the premises or be subject to arrest. *Id.* ¶ 12; *see also* Decl. of Paul L. Mills ("Mills Decl."), Dkt. No. 58, Ex. 1 ("Gonzalez Dep.") 127:20-128:2.[2] Ms. Gonzalez refused to leave the courthouse, and Officer Hirschman arrested her. Pl.'s 56.1 ¶¶ 13-14. According to Ms. Gonzalez, her "wrist was grabbed," she was "thrown against the wall," and was then "dragged down the [courthouse] hallway in handcuffs." Gonzalez Dep. 125:17-24. But Ms. Gonzalez did not sustain an injury as a result. Decl. of Michael Berg in Supp. of Defs.' Mot. for Summ. J. ("Berg Decl."), Dkt. No. 52, Ex. N (Pl.'s Resp. to Defs.' First Set of Irrogs.) ¶ 5. Although Ms. Gonzalez stated that the handcuffs were tight and that she had marks on her wrists, she did not seek medical attention following the incident because she did not want to "waste a doctor's time on something like that." *Id.* 137:16-23; 178:12-24; 289:3-11 (stating that she had "marks on [her] wrists and on [her] arms" and that "pretty much any time [she is] arrested, [she] ha[s] some kind of bruises or something"); *see also* Pl.'s 56.1 ¶ 17.

As a result of the February 1, 2012 incident, Ms. Gonzalez was charged with (1) resisting arrest in violation of New York Penal Law § 205.30; (2) obstructing governmental administration in the second degree in violation of New York Penal Law § 195.05; (3) trespass in violation of New York Penal Law § 140.05; and (4) disorderly conduct in violation of New York Penal Law § 240.20(1) and (6). Pl.'s 56.1 ¶ 20. Plaintiff ultimately accepted an adjournment in contemplation of dismissal ("ACD") of those charges. Pl.'s 56.1 ¶ 21.

---

[2] Certain portions of Ms. Gonzalez's deposition were submitted in support of her opposition to Defendants' motion to dismiss. *See* Dkt. No. 61-1; other portions were submitted in support of Defendants' motion to dismiss. *See* Dkt. No. 57. This opinion will refer to both portions as "Gonzalez Dep.".

### 2. The April 10, 2012 Incident

Ms. Gonzalez's second arrest at the courthouse took place on April 10, 2012. Court Officer Peter Dauria and Sergeant Roberto Vargas were on duty that day. *Id.* ¶¶ 22-23. Ms. Gonzalez entered the courthouse wearing a red shirt with the inscription "Warning: Stop + Frisk Kills" and a button with a similar inscription. Gonzalez Dep. 204:10-21; 205:11-17. As part of the courthouse's standard security measures, Ms. Gonzalez placed her bags on the x-ray machine for inspection. Pl.'s 56.1 ¶ 25. During the x-ray security procedure, Officer Dauria noticed Ms. Gonzalez's shirt and button, and instructed her to remove the button and to turn her shirt inside-out to obscure its message. Gonzalez Dep. 216:6-15. Sergeant Vargas, who made his way to the security post, concurred with Officer Dauria's instructions. *Id.* 217:6-218:12. Ms. Gonzalez objected, agreeing to remove the button since it could be used as a weapon, but refused to change her shirt or wear it inside out. *Id.* 218:4-12.

The officers then focused on the contents of Ms. Gonzalez's bag. *Id.* Pursuant to a UCS policy, court officers must monitor personal items scanned in the x-ray machine, "search[ ] the visitors' bags as warranted by circumstances; and follow[ ] as appropriate." Pl.'s 56.1 ¶ 24 (internal quotation marks and citations omitted). During the x-ray scan, Officer Dauria observed several metal items in Ms. Gonzalez's bags, conducted a search of the bags for contraband, and found a canister of pepper spray. *Id.* ¶¶ 25-26. Defendants point out that the canister did not have the proper label required under the New York State Health Code; Ms. Gonzalez does not dispute that fact, but maintains that she legally purchased the spray at a pharmacy in Manhattan and that the canister had a small tag warning carriers from touching their eyes if their hands came into contact with the contents. *Id.* ¶ 26; Gonzalez Dep. 206:12-24, 220:17:221-15. Officer Dauria and Sergeant Vargas then informed Ms. Gonzalez that they had to confiscate the pepper spray. Pl.'s 56.1 ¶ 27.

Ms. Gonzalez objected to the search and believed that Officer Dauria and Sergeant Vargas had targeted her because of the message on her shirt.  Gonzalez Dep. 223:2-16.  It was Ms. Gonzalez's position that she had the right to carry the pepper spray and that she needed it for her own protection.  *Id.*  Ms. Gonzalez's made her objections audible to the people in the vicinity; she was "speaking loudly enough that everyone could hear [her]." *Id.* at 220:6-16.  Sergeant Vargas asked Ms. Gonzalez to lower her voice, but Ms. Gonzalez refused because she "want[ed] everyone [there] to understand what was happening." *Id.* 223:16-23.  At that point, Officer Dauria arrested Ms. Gonzalez for disorderly conduct in violation of New York Penal Law § 240(2) and (5) and unlawful possession of pepper spray in violation of Section 54.3 of the New York State Health Code.  Pl.'s 56.1 ¶ 30; *see also* Berg Decl., Ex. L.

### 3.  The July 12, 2012 Incident

Ms. Gonzalez's third arrest at the courthouse took place on the afternoon of July 12, 2012.  Ms. Gonzalez, accompanied by another person, was standing on the sidewalk outside the courthouse.  Pl.'s 56.1 ¶ 33.  Several court officers were standing nearby.  *Id.*  At some point that afternoon, Officer Hirschman exited the courthouse, and Ms. Gonzalez's companion pointed at him, yelling, "Is that the f***ing pig who assaulted you?".  *Id.* ¶¶ 34-35.  Sergeant Vargas, who was also present, handcuffed Ms. Gonzalez's companion and escorted him into the courthouse.  *Id.* ¶ 36.  While Sergeant Vargas was placing the handcuffs on her companion, Ms. Gonzalez reached toward them from behind.  *Id.* ¶ 38.  Specifically, Ms. Gonzalez stated that she tried to get a book that was in her companion's possession by leaning toward him while he was being placed in handcuffs.  Gonzalez Dep. 246:5-23.  According to Defendants, another officer present at the scene observed what transpired, believing that Ms. Gonzalez was attempting to interfere with the arrest, relayed that information to Officer Hirschman and instructed him to place Ms. Gonzalez under arrest.

Pl.'s 56.1 ¶ 39.[3]  Officer Hirschman proceeded to handcuff Ms. Gonzalez and placed her under

arrest for disorderly conduct in violation of New York Penal Law § 240.20(1) & (5).  Pl.'s 56.1 ¶ 40;

Berg Decl. Exs. L, M.  Sergeant Vargas, was present at the scene and took Ms. Gonzalez's

companion into custody, but did not "physically restrain [or] seize" Ms. Gonzalez.  Gonzalez Dep.

256:3-15.  The charge was ultimately dismissed.  Pl.'s 56.1 ¶ 41.  According to Ms. Gonzalez,

Sergeant Vargas "handcuffed [her companion], and [Officer] Hirschman handcuffed [her]."

Gonzalez Dep. 256:16-18.

### B.  Procedural History

Ms. Gonzalez filed this action on February 3, 2015.  Dkt. No. 1.  She filed an amended

complaint on June 28, 2015.  Dkt. No. 13.  On July 20, 2015, Defendants moved to dismiss the

amended complaint.  Dkt. No. 16.  And on January 28, 2016 the Court granted in part and denied in

part Defendants' motion to dismiss.  Defendants moved for summary judgment on April 8, 2016.

Dkt. No. 47.  The motion was fully briefed on May 13, 2016.  Dkt. No. 61.

## II.   LEGAL STANDARD

Defendants are entitled to summary judgment on a claim if they can "show[ ] that there is no

genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is

proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).

A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for

---

[3] Although Ms. Gonzalez disputes this statement, her disagreement appears to be based on her inability to recall precisely who was involved in her arrest.  *See, e.g.*, Pl.'s 56.1 ¶ 39 (citing Gonzalez Dep. 246:24-247:2 (stating that she was handcuffed but could not remember by whom)).

the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To defeat a motion for summary judgment, Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide whether a rational juror could find in favor of Plaintiff. *Id.*

## III.   DISCUSSION

### A.   Claims Arising Out of the February 1, 2012 Incident

#### 1.   Excessive Force

Defendants move for summary judgment on Ms. Gonzalez's excessive force claim arising out of the February 1, 2012 incident. As the Court explained in its decision on Defendants' motion to dismiss, "[t]he Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted). To determine whether the force used in a

given arrest is reasonable, courts pay "careful attention to the facts and circumstances of each particular case," and judge the "reasonableness" of the arrest "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). In analyzing excessive force claims arising out of the use of handcuffs, courts in this circuit frequently consider "(1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Gonzalez v. City of New York*, No. 14 Civ. 7721 (LGS), 2015 WL 6873451, at *9 (S.D.N.Y. Nov. 9, 2015).

"The injury requirement is particularly important, because in order to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Morocho v. New York City*, No. 13 Civ. 4585 (KPF), 2015 WL 4619517, at *7-8 (S.D.N.Y. July 31, 2015) (internal quotations and citations omitted). "'There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort.'" *Franks v. New Rochelle Police Dep't*, No. 13 CIV. 636 ER, 2015 WL 4922906, at *11 (S.D.N.Y. Aug. 18, 2015) (quoting *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases)). Although to prevail on an excessive force claims for the use of handcuffs a plaintiff's injuries "need not be 'severe or permanent,'" they "must be more than merely *de minimis*." *Usavage v. Port Auth. of N.Y. & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (quoting *Vogeler v. Colbath*, No. 04 Civ. 6071, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005)); *see also Mesa v. City of New York*, No. 09 Civ. 10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) ("[W]hile a sustained injury that requires doctors' visits is not a necessary element of a successful excessive force claim, where a plaintiff suffers from *de minimis* injury, it is more difficult to establish that the force used was excessive in nature." (citations omitted)). Courts have typically found handcuffing that resulted in scarring or nerve damage to satisfy the injury requirement of an excessive force claim. *See, e.g.,*

*Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) (denying defendants' motion for summary judgment on plaintiff's excessive force claims where plaintiff suffered scarring from tight handcuffs); *Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990) (same); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214-15 (E.D.N.Y. 2005) ("Placing handcuffs on an arrestee tight enough to cause nerve damage may, however, constitute excessive force in violation of the Fourth Amendment.").

The undisputed facts do not support Ms. Gonzalez's excessive force claim in connection with her February 1, 2012 arrest.  Ms. Gonzalez maintains that her "head was forced into a wall," that she was dragged down the hall, and that the handcuffs "cut into her wrists."  Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. of Defs. ("Pls. Opp'n"), Dkt. No. 47, at 8.  However, she expressly disavowed any physical injury from the incident, stating that her claims are limited to "garden variety emotional distress" and include "no physical injury."  Berg Decl., Ex. N ¶ 5.  Ms. Gonzalez's disavowal, coupled with her deposition testimony that she did not seek medical treatment for any injuries and that the handcuffs only left some marks on her wrists, supports a finding that, to the extent that she suffered any injury, it was *de minimis* and, therefore, insufficient to support a claim of excessive force.[4]  *See, e.g.*, *Lin v. City of N.Y.*, No. 14 CIV. 9994 (PAE), 2016 WL 7439362, at *11 (S.D.N.Y. Dec. 21, 2016) (granting summary judgment in favor of defendants on a claim of excessive force from use of handcuffs because plaintiff's injuries were *de minimis* as she complained only of swollen and red wrists); *Rincon v. City of New York*, No. 03 Civ. 8276 (LAP), 2005 WL 646080,

---

[4] In support of their motion, Defendants submitted footage captured by two courthouse security cameras. *See* Dkt. No. 56.  The video tells a different story than that described by Ms. Gonzalez.  The video shows an officer walking Ms. Gonzalez down the hallway and toward the elevator bank; Ms. Gonzalez appears alongside the officer, walking upright, clearly not being dragged.  Ms. Gonzalez is then walked into an elevator and faces the wall.  She is being held by two female officers who are not named as defendants in the complaint.  Based on the Court's review of the video, to the extent Ms. Gonzalez's arrest involved any force at all, it was minimal.  While the Court does not rely on its review of the video in drawing conclusions here, relying instead on the documentary evidence and testimony submitted in support of Defendants' motion, the Court notes that the videotape of the incident captures what appears to be a routine arrest, not an arrest involving excessive force.

at *5 (S.D.N.Y. Mar. 21, 2005) ("Aside from the swelling in her wrist, Plaintiff does not allege that Defendants caused any other injuries.  Plaintiff's allegations are *de minimis* and simply do not amount to a constitutional violation."); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2001) (finding that testimony that handcuffs were tight and that the elderly arrestee "was pushed or dragged out of the bar and to the police car" did not establish a claim for excessive force because "it was not facially unreasonable to restrain plaintiff's arms and place her in handcuffs, even though she was of advanced age").

### 2.  False Arrest

#### a.  Probable Cause

In analyzing claims for false arrest brought under § 1983, courts in this circuit "'generally look[ ] to the law of the state in which the arrest occurred.'"  *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)).  To state a claim for false arrest under New York law, a plaintiff must show that:  "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks omitted).

"The existence of probable cause to arrest . . . is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted)).  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

warrant a person of reasonable caution in the belief that the person to be arrested has *committed or is committing* a crime." *Id.* (emphasis in original).  The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).  "[W]hether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the [arresting] officers." *Weyant*, 101 F.3d at 852.

"Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury," as "[t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).  "It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." *Id.* at 371 (internal quotation marks omitted); *see also Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." (citation and internal quotation marks omitted)); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Defendants maintain that Officer Hirschman had probable cause to arrest Ms. Gonzalez for trespass on February 1, 2012 and, therefore, her false arrest claim with respect to that arrest fails as a matter of law.  Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Br.") at 16.  Under New York law, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."  N.Y. Penal Law § 140.05.  "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so."  N.Y. Penal Law § 140.00(5).  Where the

premises "are at the time open to the public", however, a person "remains unlawfully" if "he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." *Id.*; *see also Yorzinski v. City of New York.*, 175 F. Supp. 3d 69, 76 (S.D.N.Y. 2016).

During the time leading up to Ms. Gonzalez's arrest, the courthouse was open to the public. Accordingly, to establish probable cause for arresting Ms. Gonzalez for criminal trespass, Defendants must show that (1) there was a lawful order excluding her from the property; (2) that the order was communicated to her by a person with authority to give the order; and (3) that Ms. Gonzalez defied the order. *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (citing *People v. Munroe*, 853 N.Y.S.2d 457, 458 (N.Y. Sup. App. Term 2007)) (concluding that there was probable cause to arrest the plaintiff for trespass in a bank that was open to the public because "a reasonable police officer was entitled to conclude that the statements of the bank employees delivered to the protestors," which asked them to move the protest outside the bank, "were lawful orders excluding the protestors from continuing protest activities within the bank's premises."); *see also Omor v. City of New York*, No. 13-CV-2439 RA, 2015 WL 857587, at *4 (S.D.N.Y. Feb. 27, 2015) (citing *Carpenter*, 984 F. Supp. 2d at 265) (finding that there was probable cause to arrest the plaintiff for trespass where he refused to leave a local government office that was open to the public after being asked to leave the premises by at least two office staff members).

Based on the undisputed facts, the Court finds that Officer Hirschman had probable cause to arrest Ms. Gonzalez for trespass. Ms. Gonzalez was standing inside the courthouse at the time of her arrest. Officer Hirschman had reason to believe Ms. Gonzalez was using an audio recording device on the courthouse premises, in violation of UCS policy. Pl.'s 56.1 ¶ 10. After informing Ms. Gonzalez that the device was not permitted inside the courthouse, Officer Hirschman told Ms. Gonzalez that she must leave the premises or be subject to arrest. *Id.* ¶ 12. Ms. Gonzalez does not

dispute that she refused to leave.  In other words, Ms. Gonzalez was present on premises open to

the public, and refused to leave even after Officer Hirschman, who was authorized to do so,

personally communicated a lawful order to exit the courthouse.[5]

### b.  Qualified Immunity

Defendants also argue that Officer Hirschman is shielded from liability because he is entitled

to qualified immunity.  Police officers are immune from liability in § 1983 in suits brought against

them in their individual capacities if their conduct "'does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  *White v. Pauly*, 580 U.S. --,

No. 16-67, 2017 WL 69170, at *4 (U.S. Jan. 9, 2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308

(2015)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Second Circuit has explained that

"[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are

clearly established, the qualified immunity defense protects a government actor if it was 'objectively

reasonable' for him to believe that his actions were lawful at the time of the challenged act."  *Lennon

v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see

also Weyant*, 101 F.3d at 857 ("[P]ublic officials are entitled to qualified immunity if (1) their conduct

does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them

to believe their acts did not violate those rights.").

"[A]n arresting officer is entitled to qualified immunity on claims of false arrest and

malicious prosecution if either:  (a) it was objectively reasonable for the officer to believe that

---

[5] Because the Court concludes that Officer Hirschman had probable cause to arrest Ms. Gonzalez for trespass, it need not address Defendants' argument that there was probable cause to arrest Ms. Gonzalez for disorderly conduct.  *See* Defs.' Br. at 16-17; *see also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.  Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge.") (emphasis in original).

probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007); *see also Simpson*, 793 F.3d at 268 (stating that an officer need only have "arguable probable cause," which exists if either it was objectively reasonable to believe that probable cause existed or if officers of reasonable competence could disagree on whether probable cause existed); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 416 (2d Cir. 1999)).  The Second Circuit has referred to the latter category as "arguable probable cause" and described it as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.  It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks and citations omitted) (emphasis in original).

"This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Courts may deny motions for summary judgment on qualified immunity grounds only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Id.*  In the end, qualified immunity "protects government officials when they make 'reasonable mistakes' about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  To assess whether there was arguable probable cause for an arrest, courts are reminded that police officers are "entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences." *Cerrone*, 246 F.3d at 203.  Where conflicting versions of the facts exist, however, an

officer is entitled to qualified immunity only if "the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (emphasis added).

Even if the Court were to find that there were genuine issues of material fact as to whether there was probable cause to arrest Ms. Gonzales, qualified immunity would still shield Officer Hirschman from liability. Based on the undisputed facts, it was objectively reasonable for Officer Hirschman to believe that Ms. Gonzalez, who refused to leave the premises, defied his lawful order to leave the courthouse, and officers of reasonable competence could disagree on whether there was probable cause to arrest Ms. Gonzalez.

In addition, the Court infers from Ms. Gonzalez's failure to address Defendants' qualified immunity argument that she has abandoned this claim. As the Second Circuit has held, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned. *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). And "'[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498 (S.D.N.Y. 2003) (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)); *see also Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 239 (S.D.N.Y. 2013) (dismissing plaintiff's claims where plaintiff failed to address defendants' assertion of qualified immunity); *Parrilla v. City of N.Y.*, No. 09 CIV. 8314 (SAS), 2011 WL 611849, at *1 (S.D.N.Y. Feb. 16, 2011) ("Plaintiff failed to address or oppose Defendants' arguments regarding municipal liability or qualified immunity. As a consequence, plaintiff's Section 1983 claim is deemed abandoned."). Consequently, even if disputed issues of material fact precluded granting Defendants' motion for summary judgment on Ms. Gonzalez's false arrest claim, Ms. Gonzalez did not oppose Defendants' qualified immunity

argument and has, therefore, abandoned that claim. Accordingly, the Court concludes that Defendants are entitled to summary judgment with respect to Ms. Gonzalez's February 1, 2012 false arrest claim on that basis as well.

### 3.  First Amendment Retaliation

Ms. Gonzalez argues that her attendance at the hearing was expressive conduct protected by the First Amendment and that she was arrested in retaliation for exercising her right to free speech. Pl.'s Opp'n at 10-11. "To prevail on this free speech claim, plaintiff must prove:  (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)).

"The existence of probable cause," however, "will defeat . . . a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her." *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012); *see also Curley*, 268 F.3d at 73 (concluding that a finding of probable cause obviates the need to undertake "an inquiry into the underlying motive for the arrest") (citing *Singer*, 63 F.3d at 120, *Mozzochi v. Borden*, 959 F.2d 1174, 1179–80 (2d Cir. 1992)).  As the Second Circuit reasoned, "'[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause,' even if that prosecution 'is in reality an unsuccessful attempt to deter or silence criticism of the government.'" *Fabrikant*, 691 F.3d at 215 (quoting *Mozzochi*, 959 F.2d at 1180); *see also Singer*, 63 F.3d at 120.  Accordingly, because Officer Hirschman had probable cause to arrest Ms. Gonzalez—or, at a minimum, arguable probable cause—Defendants are entitled to summary judgment on Ms. Gonzalez's First Amendment retaliation claim.  *See, e.g. Lawtone-Bowles v. Katz*, No. 14-CV-606 (CS), 2016 WL 6834018, at *10 (S.D.N.Y. Nov. 17, 2016) (granting defendants' motion for summary

judgment on plaintiff's First Amendment retaliation claims because her guilty plea following her arrest constituted "conclusive evidence that an arrest was supported by the requisite probable cause," which "serves as a complete defense to any claim of First Amendment retaliation based on that arrest") (internal quotation marks, citations, and alternations omitted); *Marlin v. City of New York*, No. 15 CIV. 2235 (CM), 2016 WL 4939371, at *14 (S.D.N.Y. Sept. 7, 2016) (concluding that plaintiff's First Amendment retaliation claims must be dismissed following a finding that plaintiff's arrest was supported by probable cause or, at least, arguable probable cause); *Corsini v. Brodsky*, No. 13-cv-2587-LTS-MHD, 2015 WL 3456781, at *8 (S.D.N.Y. May 27, 2015) (dismissing plaintiff's First Amendment retaliation claim where the pleadings demonstrated that there was probable cause for the arrests).

### B. Claims Arising Out of the April 10, 2012 Arrest

#### 1. False Arrest

As discussed above, probable cause to arrest is a complete defense to a false arrest claim. *Gonzalez*, 728 F.3d at 155 (2d Cir. 2013). On April 10, 2012, Ms. Gonzalez was arrested for violating New York Penal Law § 240.20(2), pursuant to which a "person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e makes unreasonable noise." She was also arrested for violating Section 54.3 of the New York State Health Code, which requires that all self-defense spray devices bear a warning label stating, *inter alia*:

> Warning: The use of this substance or device for any purpose other than self-defense is a criminal offense under the law. The contents are dangerous - use with care. This device shall not be sold by anyone other than a licensed or authorized dealer. Possession of this device by a person under the age of 18 or by anyone who has been convicted of a felony or assault is illegal. Violators may be prosecuted under the law.

N.Y. Comp. Codes R. & Regs. tit. 10, § 54.3.

Based on the undisputed facts, there was probable cause, or, at least, arguable probable cause, to arrest Ms. Gonzalez for disorderly conduct.  The offense has three elements:  The defendant's conduct must (1) "match at least one of the descriptions [of disorderly conduct] set forth in the statute"; (2) be "public" in nature; and (3) "be done with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness as to a 'risk thereof.'"  *Provost*, 262 F.3d at 157 (quoting N.Y. Penal Law § 240.20).  All three elements are met here.

In her opposition, Ms. Gonzalez argues that "she did not yell, although she did question the basis for the search of her bag."  Pl.'s Opp'n at 11.  But Ms. Gonzalez's own deposition testimony contradicts this description of the events.  She testified that she wanted to make her objection to her bag search audible to the people in the vicinity, that she was "speaking loudly enough that everyone could hear [her]," and that she refused to lower her voice when Sergeant Vargas asked her to do so because she "want[ed] everyone [there] to understand what was happening."  Gonzalez Dep. 220:6-16; 223:16-23.  Such conduct is consistent with how courts in this district have interpreted "unreasonable noise" in the context of New York Penal Law § 240.20(2) and supports a finding that Officer Dauria had probable cause to arrest Ms. Gonzalez for that offense.  *See, e.g., Leibovitz v. Barry*, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *9-10 (E.D.N.Y. Sept. 20, 2016) (dismissing a false arrest claim because there was probable cause to arrest plaintiff for violating § 240.20(2) when he "used a 'voice of consternation' for several minutes in order to attract members of the general public 'witnesses' while he continued recording court officers").  And because it was objectively reasonable for Officer Dauria to believe that probable cause existed to arrest Ms. Gonzalez for disorderly conduct—and reasonable officers could disagree on whether the probable cause test was met—

Officer Dauria is entitled to qualified immunity.[6]  Ms. Gonzalez's false arrest claim arising out of her April 1, 2012 arrest, therefore, fails as a matter of law.[7]

### 2.  First Amendment Retaliation

For the reasons discussed above, Ms. Gonzalez's First Amendment retaliation claim arising out of the April 10, 2012 incident fails because Officer Dauria had probable cause to arrest her for disorderly conduct.  *See Fabrikant*, 691 F.3d at 215; *see also supra*, Part III(A)(3).  Ms. Gonzalez's April 10, 2012 First Amendment claim fails for the same reasons as well.

### C.  Claims Arising out of the July 12, 2012

### 1.  False Arrest

Ms. Gonzalez's July 12, 2012 claims are brought against both Officer Hirschman and Sergeant Vargas.  The Court discusses the claims against each below.

#### a.  Officer Hirschman

Ms. Gonzalez was arrested for the third time for violating sections 1 and 5 of New York Penal Law § 240.20, pursuant to which "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: (1) engages in fighting or in violent, tumultuous or threatening behavior; or . . . (5) [h]e obstructs vehicular or pedestrian traffic."  N.Y. Penal Law § 240.20(1), (5).

---

[6] The Court notes that, here, too, Ms. Gonzalez failed to address Defendants' qualified immunity argument, from which the Court infers that she had abandoned this claim.  *See Jackson*, 766 F.3d at 198; *see also supra* Part III (A)(2)(b).

[7] Because the Court concludes that there was probable cause to arrest Ms. Gonzalez for disorderly conduct, it need not address whether Officer Dauria had probable cause to arrest her for violating Section 54.3 of the New York State Health Code.  Nor does the Court need to address Plaintiff's argument that Defendants did not "voucher the canister or preserve the canister as evidence . . . because it proved their own misconduct, by showing that the canister was properly labeled."  Pl.'s Opp'n at 11.  The Court observes, however, that Ms. Gonzalez testified that her pepper spray had a small tag that warned carriers from touching their eyes if their hands came into contact with the spray.  Gonzalez Dep. 206:12-24, 220:17:221-15.  This warning does not appear to satisfy the labeling requirements set forth in Section 54.3.  *See* N.Y. Comp. Codes R. & Regs. tit. 10, § 54.3.

The undisputed facts establish that Officer Hirschman had probable cause to arrest Ms. Gonzalez for violation of § 240.20(1).  Ms. Gonzalez does not dispute that she attempted to retrieve a book from her companion, who was being handcuffed by Sergeant Vargas, and that she leaned toward him in order to reach it.  Gonzalez Dep. 246:5-23.  Based on her own account, therefore, the Court finds that the reasonable conclusion to be drawn from the facts known to Officer Hirschman at the time was that Ms. Gonzalez was attempting to physically interfere with her companion's arrest, which Officer Hirschman could reasonably have viewed as threatening behavior.  Therefore, the Court concludes that Officer Hirschman had probable cause to arrest Ms. Gonzalez for disorderly conduct.

Regardless, the Court concludes that Officer Hirschman is entitled to qualified immunity.  Under the forgiving arguable probable cause standard, it was objectively reasonable for Officer Hirschman to believe that Ms. Gonzalez was engaged in threatening behavior that could interfere with Sergeant Vargas's arrest procedure and, similarly, officers of reasonable competence could disagree on whether there was probable cause to arrest her for disorderly conduct based on the undisputed facts.[8]

---

[8] Defendants argue—and Ms. Gonzalez did not contest—that it was permissible for Officer Hirschman to rely on information relayed to him by another officer.  The Court agrees.  Probable cause to arrest may exist even if the arresting officers do not possess firsthand knowledge of the suspect's alleged criminal activity.  "The existence of probable cause need not be assessed on the basis of the knowledge of a single officer." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).

> [A]n arrest . . . is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.

*Id.* (quoting *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001)); *see also Annunziata v. City of New York*, No. 06 CIV. 7637 (SAS), 2008 WL 2229903, at *3 (S.D.N.Y. May 28, 2008) ("The 'fellow officer' rule provides that even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer acts upon the direction of or as a result of communication with a superior or [fellow] officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest.") (internal quotation marks and citations omitted).

### b. Sergeant Vargas

Because Sergeant Vargas was not involved in Ms. Gonzalez's arrest that day, the claims against him must be dismissed.  Absent any personal involvement, an individually named defendant cannot be held liable for a plaintiff's alleged § 1983 claim.  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  With respect to a claim for false arrest, this means that each individual must have been personally involved in the arrest in order to be held liable.  *See Colon*, 58 F.3d at 873.  The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts."  *Provost*, 262 F.3d at (citing *Gaston v. Coughlin*, 249 F.3d 156, 165-66 (2d Cir. 2001).

Although Ms. Gonzalez does not dispute that Sergeant Vargas was not personally involved in her arrest, she argues that he is liable for failing to intervene in her unlawful arrest.  Pl.'s Opp'n at 13.  However, a failure to intervene claim "requires the existence of an underlying constitutional violation—such as a false arrest—or is excused by the existence of probable cause to make an arrest."  *Ladoucier v. City of New York*, No. 10 CIV. 05089 RJH, 2011 WL 2206735, at *4 (S.D.N.Y. June 6, 2011) (citing *Taveres v. City of New York*, No. 08 Civ. 3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (concluding that a failure to intervene claim requires, *inter alia*, that officers failed to intervene to prevent other officers' *constitutional* violation)); *see also Lucky v. City of New York*, No. 03 CIV.1983(DLC), 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004), *aff'd*, 140 F. App'x 301 (2d Cir. 2005) (dismissing plaintiff's failure-to-intervene claim on summary judgment after finding that defendants demonstrated that there was probable cause to arrest plaintiff, which "defeat[ed] [plaintiff's] claim that any of the defendants had a duty to prevent that arrest.").[9]  Accordingly,

---

[9] Defendants argue that Ms. Gonzalez's failure-to-intervene claim must be dismissed because she did not plead a separate failure-to-intervene claim in her amended complaint.  Defs.' Reply at 4.  Defendants are correct that "it is inappropriate to consider claims not pleaded in the complaint in opposition to summary

because the Court has concluded that Officer Hirschman had at least arguable probable cause to arrest Ms. Gonzalez on July 12, 2012, any claims against Sergeant Vargas fail as a matter of law.

### 2.   First Amendment Retaliation

Ms. Gonzalez's First Amendment retaliation claim in connection with the July 10, 2012 incidents fails for the precisely the same reasons her two other First Amendment claims failed, namely, that her arrest was supported by probable cause.  *See supra*, Parts. III(A)(3) and (B)(2).  The Court notes, however, that Ms. Gonzalez appears to argue that she should prevail on this claim because her *companion's* remarks—pointing at Officer Hirschman and asking, "Is that the f***ing pig who assaulted you?"—are protected under the First Amendment.  Pl.'s Opp'n at 13-14.  Ms. Gonzalez goes as far as arguing that she *and* her companion "were falsely arrested for that First Amendment-protected activity, in violation of the First Amendment."  *Id.* at 14.  Ms. Gonzalez is the only plaintiff in this action and has provided no legal or factual basis for the Court to conclude that her companion's arrest following his comment was a restriction on her own free speech rights.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety.

The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated:  January 31, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

judgment."  *Scott v. City of N.Y. Dep't of Correction*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd*, 445 F. App'x 389 (2d Cir. 2011).  Because the Court already concluded that probable cause defeated this claim, it need not address Defendants' alternative ground for dismissal.